All right. Sir, if Good morning. Good morning. Good morning. My name is Kerry Getsch. I represent Adam Dutton. Adam pled guilty to first degree murder and aggravated criminal sexual assault in an open plea and received an aggregate sentence of 47 years. That was composed of a 35-year sentence for the murder and a 12-year sentence for the criminal sexual assault. Unfortunately, the criminal sexual assault sentence was unlawfully low per statute. The minimum for the offense that he pled guilty to was 16 years. And what was his maximum sentence? Had he been sentenced in a full range of penalties? For both murder and, because they're mandatory consecutive, it would have been 100 years. Would have been natural life, wouldn't it? Natural life plus? Also for murder. For the murder, natural life plus 16. So it would be natural life followed by a consecutive sentence of 16, correct? Yes. Okay, sorry. The state wasn't, well, hadn't filed at that point an intention to receive a life sentence. So, in theory, he hadn't pled and got to trial. From Adam's perspective, this case is relatively simple. Because he received an avoidable sentence, this fortunate remand is his backer, the opportunity for the trial judge to impose a legal sentence. The state counted this. And what could that legal sentence be? Just what you told Justice Burkett? Well, I don't see any reason. It could be whatever the judge, in his discretion, feels that the sentence would be appropriate. Is there some thought that the judge will impose less on the murder and a legal sentence on the other and make it better for your client? I mean, that's a possibility. I mean, the judge should have the discretion to impose the sentence that the judge, a legal sentence that the judge feels is appropriate. I mean, I think it's fairly obvious that the judge thought a 47-year sentence was appropriate. I mean, the judge knew the consecutive nature of the sentencing and the mandatory. The judge sentenced him. He could have sentenced him up to the range that Justice Burkett. The minimum would have been, by law, 36. It sounds like you're arguing against severability, that if we're going to send it back, we send back both, correct? Right. Because the judge will look at the number, the possible range of sentence and arrive at a number that the judge feels is a just and appropriate sentence, right? Right. And I think it's important that we in the appellate court often, when we're arguing sentencing, we point out the trial judge has a lot of discretion in sentencing, and the trial judge is the one exercising discretion. And if we deal with the state's argument of severability, we're really just removing the bulk of discretion from the trial judge to impose a sentence that he or she feels is appropriate. With regard to the state's forfeiture argument, how can the trial court's misunderstanding of the applicable minimum sentence represent fundamental error where the error clearly benefited your client? Well, I don't think that the client kind of – first of all, I don't think it's apparent that Adam benefited. If the aggregate sentence that the judge wanted to impose was 47 years, the judge was looking at a way to impose that sentence. So just because the one sentence was impermissibly low doesn't mean that Adam necessarily benefited. At the same time, to show that there was fundamental error, though, don't you have to show that there's some likelihood that on remand that your client was put at a disadvantage by the judge's misunderstanding? No. We have to show that the judge misunderstood the applicable rate and that it affected the sentence. To the detriment of your client. I don't believe that there has been a case that says it has to show that it detrimented the client. Maybe this will be the case. Yeah. But the main retort to the state's plain error argument and also judicial estoppel is that if we don't address this problem now, the state can always file a maintenance action later, and they can try to fix the problem. So why wouldn't this court fix the problem? It's a plain error by any sense of standard. It violates the law. Are you suggesting, then, that us granting the relief that you're seeking is to level the playing field, to give the defense an opportunity to, as you said, cure the problem, the same as the state has it in terms of filing a mandamus? Correct. I don't see any other situation where this is a direct appeal, and we've noticed the sentence is void or voidable. If this isn't a case where the sentence shouldn't be sent back for resentencing, then there isn't a case. Then basically voidable sentences become uncorrectable, at least for sentencing. Well, that's not the case. In most of the cases, the judge has misapprehended the minimum, that the minimum is actually greater, correct? And here, the judge misapprehended. The minimum was lower than it should have been. So how is your client deprived of a fair sentencing hearing when the judge misunderstands the minimum sentence and imposes a lower sentence than is required by law? I think you just answered your own question. You imposed an unlawful sentence. How is that a fundamentally fair sentencing hearing when the judge— Because if the judge— I mean, yes, arguably the defendant benefits, but the judge still has to follow the law. But it's not the state's burden to show that the sentence was unfair. It's your obligation to show that it was unfair. Right, and I've done that by citing the statute that shows that the sentence was unlawful. So suppose the judge is going to be given a fixed number of years on the murder and then a fixed number of years on the aggravated criminal sexual assault, which theoretically is what happened here. Your client clearly benefits. Why does it forfeit your reply? Because then the state can file a mandamus action and say, this guy benefited from an illegal sentence, so you need to raise it. And the defendant has no retort. So, I mean, you're basically making a one-sided system, where the state has an action to correct an avoidable sentence, but the defendant is precluded from it. So if the defendant is judicially stopped from challenging a sentence, then the state should get up here and say, well, then we're never going to file a mandamus action when the defendant benefits from an unlawfully low sentence. But if this is sent back and the trial court corrects it, your client's going to get more time. Not necessarily. Well, if he doesn't change the 35, but he applies the appropriate minimum, that's going to be more. If he doesn't do anything. And your client understands that. Yes. He also understands that the state could have, in fixing this, were giving a lawful sentence. So we're giving certainty at the sentence. Because theoretically, Adam could have labored under this sentence until the day he was due to get out, and the state could have noticed the problem, filed a mandamus action. I mean, how likely is that? And there would be obviously arguments to be made at that point. It would maybe be a little better than the one here, because you say he could get a lower sentence. He could. But if the 35 stays the way it is and the proper minimum is applied, or he's had some trouble in custody and therefore the judge can make some other considerations, he could get more time. We're asking that the judge have the opportunity to craft a sentence within his discretion. Obviously, there's a risk there. But there's a risk in not addressing it as well. Would the state be bound by the original sentence? Could they go back and argue, since the defendant has moved to reconsider it opens up the whole gamut? I think the judge has the discretion as to whether what type of hearing he or she wants to conduct it. The judge just wants to read the transcripts from the original sentencing hearing and re-sentence based on that evidence that was presented. I think that's appropriate. I think if the judge says, let's hold the hearings, let's call in witnesses, I also think that's appropriate. I think the judge has the discretion to do within the confines of the statutes. And that's really all that we're asking for. So unless there are further questions, I'll ask that this Court remit both sentences for appropriate re-sentencing. Thank you. Ms. Schwinn. May it please the Court, Counsel, good morning. My name is Kristen Schwinn. I'm here on behalf of the people. Your Honor is here exactly right when you said that the defendant is asking to have his sentence or his sentences remanded so that he can get a longer sentence. Everyone's in agreement that his criminal sexual assault sentence is four years lower than the minimum. Everyone is in agreement that right now, as it stands, the defendant has benefited from a statutorily lower than authorized sentence. He is presently set to be serving four years lower than the minimum sentence required for the sex assault. Well, I don't think Counsel's agreeing that that's a benefit. He's saying it's a risk because the State on the last day of his incarceration could bring a petition for mandamus when he's getting ready to walk out the door. And even if the Supreme Court doesn't order by a supervisory order or something of that nature that he go back for reconsideration, he's still got to wait until that time is over for the hearing to happen. I would respectfully disagree with that. For several, some of the same reasons that we cite in our brief, primarily judicial estoppel. The State would be estoppel. The State would be estoppel. And precisely because we've already raised judicial estoppel here, I would argue that there would probably be a pretty strong argument for the defendant to say, you can't argue one way and then come back and lie in wait for the day before he's set to get out. Well, that's the argument that could be made, but there is a period of time in which it gets filed and then it's answered in their hearings. It won't amount probably to four years, but it certainly could amount to more time. I think that judicial estoppel would similarly preclude the State from arguing that he should get four more years. Within the 30 days after the defendant's sentence, the State could have filed a post-sentencing motion. They did not do so. Yes. I would argue that the State would be precluded from being. And I understand that your point, Justice Hutchinson, which is sometimes in the appellate and the Supreme Court cases take time. But here, the State would not be able to wait until the last moment, precisely for several of the reasons we've already argued why he shouldn't be forfeited or precluded from going back to challenging it. How was it that everybody in the courtroom misunderstood the mandatory minimum? I mean, the judge, the prosecutor, the defense, the whole State's attorney's office? Ms. Santillana, I do not know. It seemed like it was a mutual misunderstanding by everybody. And I would point out that there is a count, count 15. So I think you know that. I know that. That would have been a viable charge, which this sentence would have been within the range. I am not privy to what was going on. But it seemed that everybody was operating that this charge would be six to 30 years, which is precisely why, Justice Bouquet, as you say, he did not receive an unfair sentencing hearing. Everybody operated under the six to 30 range. And, in fact, as you say, the defendant did not suffer any prejudice. In fact, he suffered a benefit and a windfall in that he's receiving a four-year lower sentence than the minimum required sentence. And I would just note that counsel talks a lot about an aggregate sentence. This is a blind plea. He pled guilty to two counts, murder and criminal sexual assault. And, in fact, on page 636 of the record, the court in sentencing him doesn't sentence in the aggregate sentences to two specific sentences. He says, I'm going to sentence you to 35 years on the murder. That will be served at 100 percent. I will sentence you to 12 years on the criminal sexual assault. That will be served at 85 percent. This, I would argue that it's not an aggregate. These are two separate sentences, which is why should this court want to send it back for a new sentencing hearing, it is separable from the murder charge because the court did two separate sentences because it was a blind plea to two charges within the offense. If we set this back and everybody looks at it, and in response to your disbelief as to how everyone can be so misled, that they go, oh, our mistake was we were all operating under that the substance of count 15 is what we thought. We got the wrong count number as opposed to anything else wrong. On remand, could the trial court just go, everything stands, just change count 14 to count 15? You know, Your Honor, I don't know what would happen at that point. I do think that that could be something. I think that it would require a couple more steps because the charges are. The state would have to move the reinstate that. Yes, Your Honor, exactly. The charges are just, count 15 is dismissed at this point. Right, but to suggest that it was just simply mutual mistake, we all thought count was 15 was 14, 14 was 15. You know, Your Honor, if the record bears that out, below that, that might be the case. I don't know. I do know that from the record here. Because it bothers me, too, that everybody in the court witnessed this. It seems much more reasonable that we got the count numbers wrong than that we got the statute and the sentencing parameters wrong. Anyway. You know, Your Honor, I apologize. I don't have, I have what the record has, and the record specifically says count 14, and I do note that there is a count that has that, and that might be the case. What we have right here, right now, though, is the defendant receiving a windfall and now asking to go back and get, to be sentenced to a high sentence. Isn't he entitled to certainty? To what he is serving? Yes. Of course, you know, of course he's entitled to certainty. Here, had this not been, you know, this is an avoidable sentence. It's not a void sentence. Right, there are no void sentences. So, you know, the court has. Based on your representations here, it seems to be your position is that you acknowledge he'd be barred from seeking a mandamus now. Yes. Yes. You know, the state. This is it. Based on what we have argued, I would argue that the state would be precluded from changing its position, you know, providing uncertainty to the defendant based on what we've provided with certainty here. And, again, this is, as we said, you know, in terms of severability, if this court does decide it wants to send back the sex assault case, it's a blind plea. There are two separate and discreet sentences. Pursuant to this court's and SHLABA, excuse me, S-C-H-L-A-B-A, CH is cited in the brief, this sentence could be severed from the murder charge and resentenced without affecting the validity or an essential term or any sort of the murder issue because he pled to two separate charges. There was a sentencing hearing. The court gave two separate sentences. It's not a fully negotiated plea. There was no cap of an aggregate. There was no fully negotiated plea where they pled to a certain amount of numbers. This is a blind plea and so, therefore, can be fully severed and go back. How old was the defendant at the time he was sentenced? Your Honor, I believe he was in his 20s. I don't exactly know. And what was his criminal history? Does not have a – did not have a large amount. I do know they conducted an extensive sentencing hearing, several days of aggravation and mitigation, plus a full binder submitted on behalf of the defendant from several people. So I believe that there was a very lengthy sentencing hearing conducted on behalf of the court in order to fully understand what the appropriate sentence would be on both the murder and the sex assault. But let's go back just before Justice Burkett's question. A lot of things could happen, but the cases were – or charges were dismissed. These two were left. They were still handled at the same sentencing hearing. And, you know, the judge took into account all of the evidence on each of the charges, aggravation and mitigation. Some of them probably were crossed. I mean, some of them he said this applies here. And then when he talked about the sex assault, said this aggravation applies also here. So what's the logic in separating them? They're separate sentences. He had to do it the way he did it, although a mistake was made on the second charge. So why wouldn't both of them go back? Well, there's nothing wrong with the murder. The murder sentence is within the permissible range. But it all happened out of the same sentencing hearing, out of the same basic evidence. You said it was an extensive hearing. The same binder was submitted for the defendant, I assume, on both cases. It wasn't labeled for murder only. No. And so, you know, it just seems that it wouldn't be, first, judicial economy, and secondly, kind of nonsensical to conduct two – he conducted one hearing on two charges. Sure. And, Your Honor, both charges might go back for a new sentencing hearing had the defendant argued that there was an improper factor considered or something in terms of the, you know, one of the factors in aggravation or mitigation that would have affected both, but, you know, was improperly considered. The defendant hasn't raised that argument. He's raised a very specific argument related only to the sexual assault sentence. It's not related to the murder sentence. And the only reason why we're talking about the murder sentence is the thought that maybe, you know, and, again, it's not brought out in the record because he gave two separate sentences, that maybe the court had one number and then, you know, decided what he was going to give on the murder and the sex assault based on the total number that he wanted to serve. That's not what the record says. The record gave two separate. And, in fact, these are served at different truth in sentencing. So he served 100% at the 35 years and 12% at the 85. So it's not as if he's just, you know, one can infer that it's not as if the court is just picking a number. You know, there are some things that flow from a murder sentence that is different that flows from a sex assault. One of the main is that you're serving 100% of your time compared to the sex assault. So I would argue that there's nothing in the record that supports this theory that the court gave, had one number in mind, and then picked two numbers to add up to that number, which is precisely why there's nothing wrong with the murder charge. And it's a blind plea that doesn't have a cap. Excuse me, it's not a fully negotiated. It's not a partially negotiated. It's a blind plea that had two different sentences for two different crimes, although there was one sentence. But as in Shalabach, as this court said, you could sever it. You can sever it if it doesn't have any effect on it. Shalabach, they couldn't sever it because they had a fully negotiated plea, you know, a time for the intimidation and cause only for the aggravated DUI. And at that point, you're worried about the prejudice and the downfall for the defendant. Here, what we're really ñ the defendant has already received the benefit, and now he's asking for essentially more time because we all, you know, would agree that if it goes back to sentence it within the statutory range, the sex assault would be at least four more years. Well, the only logic to this appeal is that the defendant's looking at the second bite at the apple. That's ñ Yes. And he's not looking for a severance because if there's a severance, then he automatically gets more time. Yes, that is correct. If there's not a severance. Right. No, no. If there is a severance, he gets more time. I'm sorry, yes. You're right. So, yeah. And, you know, the state is ñ you know, the state is ñ would be precluded from ñ you know, would not be precluded from asking from the range of ñ you know, well within the range. In this case, the sex assault would be 16 to 40 years. As Your Honor pointed out, the murder is 12 to 60. And if this Court were to find that both would go back, then both sentences were bad, and the state would not be precluded from asking, you know, for more time. So if there are no other questions. Well, that's an interesting point. I read a lot of cases the last week, but I believe that if the sentencing ñ the state asks for 50? That's correct. So your position would be they could ask for up to 50? Our position is that if this Court were to send it back for both charges, it would be implying that both sentences are bad because they were impermissible. So then the bar on the resentencing statute would be inapplicable. So the state could go back and ask for 50. And the state asked for 15 original sex assault, and the state could ask for more. So that would be something. Again, my question is you would ñ if we sent them back for a re-haramble, so your position would be the state could ask for up to 50 on the murder and up to 15 on the ñ No, it could ask for anywhere in the statutory range. Under the statute. Okay. I just wanted to be clear. So because this Court would be saying both sentences were statutorily noncommercial. So that would be ñ it would be within the range. Your position regarding a showing of a sentence in order for the defendant to be ñ to show plain error, what would he have to show to show that he received an unfair sentence? Well, Your Honor, I think you hit it precisely on the head when the Court believed that, for instance, the Court believed that the minimum was, you know, 14 years. And, in fact, the minimum is six years. Where, you know, the starting basis is that there is an issue. But really here, the point is that he received a lower sentence. And because there's no more void sentence rule, it's a ñ you know, the Court had jurisdiction, although the Court was incorrect in doing this in making the decision. That's the effect of Castleberry. That is the effect of Castleberry. He received a benefit. And, you know, Your Honor, I believe you're precisely on point when you say that it's very difficult to argue a defendant when there's no issues of improper factors of mitigation and aggravation. There was a full sentence. And, you know, a sentencing hearing was conducted. And he received a lower sentence because everyone was under the belief that a minimum ñ it was a lower minimum than it really was. It's very ñ you know, I would argue it's very difficult for a defendant to show. And, in fact, a defendant can't show that he suffered a prejudicial sentence in hearing, that it deprived him of a fair hearing. So, yeah. I do have a question. Not that I'm really good at math, but I've sat here and I've figured out if the judge wanted to give ñ we sent it back and the judge says, I want to arrive at the same number at the end, and so I increase 12 to 16 but only at 85 percent and knock 4 off at 100 percent, there is a benefit to the defendant. However slight it might be, it amounts to a few months perhaps, but there is a benefit. There ñ in terms of sending back both, there could be ñ he could serve less. That is a possibility. Again, I'm not that great in math, but, I mean, if you, you know, just figure out adding 4 at 85 percent and subtracting 4, again, assuming getting in the head of the trial judge, you know, this is the number that I think is right based on he'd be approximately this age when he gets out. Isn't that some benefit? Sure. Because of the difference in the percentages? Sure. The defendant has received a benefit and he's asking for an even bigger benefit. He's serving 12 at 85 and now he'd be seeking to serve 4 years less that would have to have been served at 100 percent. Right. So it's an even ñ it's a potentially even bigger benefit. Okay. Thank you. You're welcome. I just wanted to address your question first. Adam had no criminal history, not even traffic. And the State got into some arguments that we didn't make. I know for a fact we would have argued that the murder sentence was excessive, but we couldn't do that without the State noticing that the second sentence was void. So we're precluded from making an excessive sentence argument because the State could come back and say, well, wait a minute, that second sentence was voidable. So the State says, well, they didn't challenge the sentence on the basis of, you know, whether the judge probably considered medication and aggravation or whether the sentence was excessive. And no, we didn't because I guarantee you the State wouldn't have come back and said, well, we're judicially stopped from challenging this voidable sentence. If we had argued that the sentence was too low, the State would have said, well, no, it wasn't too low. We should raise it. And that there wouldn't have been anything that we could say other than to acknowledge that the second sentence was a voidable sentence. And so there are reasons why we didn't argue the murder sentence was excessive because, again, Adam had zero criminal history. This was a one-off offense where arguably fueled by jealousy and alcohol. It was a particularly brutal crime, though. Absolutely. It was a horrible crime. Avoiding the specifics, we're not able to argue the excessive sentence for the murder without the State noticing what we noticed. But isn't that just another risk? You answered one of my questions earlier that it's a risk. Isn't that just another risk that's involved in this type of an action? Well, yes, it's obviously a risk, and that's why we felt it was important to point out that he didn't receive a valid sentence. So if we send this back for resentencing, he gets a valid sentence, then we can proceed in the proper manner and decide whether we should challenge that as excessive. We're precluded from doing that when one of the sentences is voidable because the State can just say he shouldn't receive more time. So it's a catch-22. What issues were raised in the post-sentencing motion? That the murder sentence was excessive. That based on his history or lack thereof, that the 35 years was an excessive sentence. But the State didn't argue at that point the voidability of the 12-year sentence. Right, nobody did. I mean, as pointed out, it's sort of amazing that nobody noticed this until the appeal. But this Court has the opportunity to extend it. And I'd also like to address the State uses windfall a lot. And that's operating under the assumption that the judge doesn't act logically. I mean, logically, the judge is going to consider it. I know these sentences are consecutive, as Justice Burkett points out. I want a sentence to where this guy gets out at a certain point in his life. I mean, that's how judges think. That's what slot-lock was. It wasn't that, oh, I think nine years is appropriate for this charge and nothing for this charge. It's just, I think this guy should probably be in for about nine years. And, you know, that's how judges in real life grab sentences. They're not oblivious to truth in sentencing, the mandatory consecutive nature. I mean, we assume the judge knows the law, obviously. Well, he asked at the beginning, before the sentencing, he asked the parties. Now, this is what this is, right? Right. I mean, they're not resolving either the defense or the State's attorney for not catching this mistake. I mean, everyone was at fault here. Well, that's the point of honoring the forfeiture. Everyone should have known, especially the defense, when you're filing a motion to reconsider a sentence. But so if the State's position holds, the defense attorney will never point out avoidable sentence because arguably their client is going to benefit, and the State will never challenge it because, I mean, and that's the thing. I know. I understand what you're saying. You're preserving a potential issue for appeal because if you raise it in trial court, he's going to get more time right away. Well, no. I'm saying that they won't raise it and then we'll never raise it because then apparently the State will never raise it because the State's position is now that if a defendant receives avoidable sentence and benefits from it, then we're never going to do anything because how could they not do anything in this case? They're saying, is it only because they're in judicial estoppel in this case? Because aren't they going to then argue it in every case? How does it not apply in every case where the defendant benefits from an impermissibly low sentence? So if judicial estoppel applies in this case, then it applies in every case, and the State will no longer. I mean, it would be totally hypocritical to apply it in another case, say, well, we didn't argue judicial estoppel in that case. Well, if the legal principle applies, it applies. It applies in every case. So their whole mandamus actions will no longer. I mean, they should be precluded from seeking mandamus in every case. Well, you can't. The State looks at each individual case and making a decision whether or not it's going to seek mandamus. I mean, we also know that judges sometimes, from misdemeanors to felonies, impose sentences that are technically voidable, but no one seeks to challenge them. That happens all the time. Right. This is one of those instances. Well, and if judicial estoppel applies here, I just don't see how it wouldn't apply in every single instance. I mean, the law is the law. If judicial estoppel applies when the defendant benefits from a non-permissibly low sentence, then the State will be precluded from challenging those impermissibly low sentences. I don't believe that. Unless they do it in a timely manner. Well, within 30 days. Yeah. And that could happen. It didn't happen in this case, but I think what she's saying is not because we argued it here that we can't change our position, but that time has passed, and we could make that clear. The State, if you blow your time limit, you're stopped. It's not because they necessarily argued it here. I think the Supreme Court might say something like that if it takes too long. I mean, every one I've looked at came very quickly. I mean, especially in the Castleberry case, it came right after they were told. You can, you know, I think they went after a judge gone. But that was several years after. But they were only told they could do it then, and they did it immediately. Well, no, they've always had the option of doing it. Well, they weren't sure, but the Supreme Court certainly told them you better do it this way or else, and they did. Right. So I think that's the guidepost for how the mandamus should be brought. But my point is, how can the State bring a mandamus action in any case? Ever again, after the 30 days. I mean, they're not going to bring a mandamus within 30 days. They're going to challenge it in the trial court. So mandamus is basically off the table if judicial style is applied. Yeah. And with that, unless there's any more questions. Thank you. Thank you. Thank you for your arguments this morning. We will take the matter under advisement. You will get a decision in due course, and we will stand in recess to get ready for our next hearing.